

FILED IN OFFICE
CLERK STATE COURT
GWINNETT COUNTY, GA

**IN THE STATE COURT OF GWINNETT COUNTY**

2018 JAN 26  AM 8: 59

**STATE OF GEORGIA**

RICHARD ALEXANDER, CLERK

| | |
|---|---|
| MICHELLE McKINNEY, Individually, and as Administrator of the Estate of Lucille Dubose, ) ) ) ) | |
| Plaintiffs, ) | CIVIL ACTION |
| vs. ) | FILE NO.: **18C  00506 - 4** |
| GWINNETT OPERATIONS, LLC d/b/a LIFE CARE CENTER OF LAWRENCEVILLE, and LIFE CARE CENTERS OF AMERICA, INC., ) ) ) ) | |
| Defendants. ) | |

## COMPLAINT FOR DAMAGES

Come now Plaintiffs Michelle McKinney, Individually, and as Administrator of the Estate of Lucille Dubose (hereinafter "Plaintiffs"), and present their Complaint for Damages against Defendants Gwinnett Operations, LLC d/b/a Life Care Center of Lawrenceville and Life Care Centers of America, Inc.:

1.

In this action, Plaintiffs show that the Defendants' violations of federal and state law and regulations in the operation of a long-term care facility, professional negligence, and simple negligence in the provision of nursing home care, treatment and services proximately caused severe and life-threatening injury, pain, suffering, medical expenses, funeral and burial expense, and the death of Lucille Dubose.

**Exhibit A**

## JURISDICTION AND VENUE

2.

Defendant Gwinnett Operations, LLC d/b/a Life Care Center of Lawrenceville ("LCCL") is an entity capable of being sued in Georgia and is subject to the jurisdiction and venue of this Court.

3.

Defendant Gwinnett Operations, LLC is a Tennessee corporation licensed to conduct business in the State of Georgia.  This defendant can be served with process by service upon its registered agent for service of process in the State of Georgia:  Corporation Service Company, 40 Technology Parkway South, Suite 300, Norcross, Gwinnett County, Georgia 30092.

4.

Defendant Life Care Centers of America, Inc. ("LCCA") is an entity capable of being sued in Georgia and is subject to the jurisdiction and venue of this Court.

5.

Defendant Life Care Centers of America, Inc. is a Tennessee corporation licensed to conduct business in the State of Georgia.  This defendant can be served with process by service upon its registered agent for service of process in the State of Georgia:  Corporation Service Company, 40 Technology Parkway South, Suite 300, Norcross, Gwinnett County, Georgia 30092.

6.

Defendant Gwinnett Operations, LLC d/b/a Life Care Center of Lawrenceville is headquartered in Cleveland, Tennessee, and it operates a 125-bed nursing home in Lawrenceville, Georgia.

7.

Defendant Gwinnett Operations, LLC was and is a for-profit corporation which claims to specialize in the care of individuals who are chronically infirm, mentally dysfunctional, and/or in need of nursing care and treatment.

8.

Defendant Life Care Centers of America, Inc. is headquartered in Cleveland, Tennessee, and it operates more than 200 skilled nursing homes, assisted living facilities, retirement living communities, home care services and Alzheimer centers, including Life Care Center of Lawrenceville.

9.

Defendant Life Care Centers of America, Inc. employs over 20,000 employees in the United States.

10.

Defendant Life Care Centers of America, Inc. was and is a for-profit corporation which claims to specialize in the care of individuals who are chronically infirm, mentally dysfunctional, and/or in need of nursing care and treatment.

11.

Defendant Life Care Centers of America, Inc. has and had operational and managerial control of LCCL at all times relevant to this Complaint.

12.

LCCL is located at 210 Collins Industrial Way, Lawrenceville, Georgia, in Gwinnett County, Georgia.

13.

During Lucille Dubose's admission, Gwinnett Operations, LLC was doing business as LCCL in Lawrenceville, Georgia.

14.

In 2016, Life Care Center of Lawrenceville was owned by Defendant Gwinnett Operations, LLC.

15.

In 2016, Life Care Center of Lawrenceville was operated by Defendant LCCA.

16.

In 2016, Life Care Center of Lawrenceville was managed by Defendant LCCA.

17.

At all times material hereto, Defendant Gwinnett Operations, LLC, upon information and belief, received money from patients, insurance companies, the United States Government and the State of Georgia in exchange for providing services to the residents of its nursing homes.

18.

At all times material hereto, Defendant Life Care Centers of America, Inc., upon information and belief, received money from patients, insurance companies, the United States Government and the State of Georgia in exchange for providing services to the residents of its nursing homes.

19.

Defendants Life Care Centers of America, Inc. and Gwinnett Operations, LLC received payment for services rendered to Lucille Dubose while she was a resident at the Life Care Center of Lawrenceville nursing home.

20.

LCCA is the largest privately-owned nursing and retirement center company in the United States.

21.

At all times material hereto, LCCA receives a substantial amount of money from the nursing homes which it manages, operates or owns.

22.

Since its opening, LCCL has been operated and managed by LCCA.

23.

LCCA is the only corporation that has ever operated the LCCL facility.

24.

LCCA is the only corporation that has ever managed the LCCL facility.

25.

LCCA has employed all of the Executive Directors at the LCCL facility.

26.

LCCA has employed all of the Directors of Nursing at the LCCL facility.

27.

LCCA has employed all of the nurses at the LCCL facility.

28.

LCCA has employed all of the nursing assistants at the LCCL facility.

29.

LCCA opened LCCL and began actively seeking and accepting residents in its Sub-Acute, Long-Term Care and Alzheimer Units.

30.

At all times material hereto, Defendants Life Care Centers of America, Inc. and Gwinnett Operations, LLC were required to satisfy the provisions of Sections 1819 and 1919 of the Social Security Act in order to qualify to participate as a skilled nursing facility in the Medicare Program and as a nursing facility in the Medicaid Program.

31.

42 CFR 483.1, et seq., are designed in whole or in part to protect the health and welfare of residents in facilities such as Life Care Center of Lawrenceville.

32.

During Lucille Dubose's admission at LCCA, Defendants Life Care Centers of America, Inc. and Gwinnett Operations, LLC were required to comply with each of "the requirements for long-term care facilities" established by the Secretary of Health and Human Services in 42 CFR 483.1, et seq., in order to qualify to participate as a skilled nursing facility in the Medicare program and as a nursing facility in the Medicaid program.

33.

During Lucille Dubose's admission at LCCL, at all times material hereto, Defendants Life Care Centers of America, Inc. and Gwinnett Operations, LLC were required to abide by and satisfy the rules and regulations of the Georgia Department of Human Resources pertaining to homes, rules and regulations, Chapter 111-8, et seq.

34.

At all times material hereto, Defendants Life Care Centers of America, Inc. and Gwinnett Operations, LLC were required by law to have sufficient nursing staff at the Life Care Center of

Lawrenceville facility to provide nursing and related services to maintain the highest possible practicable physical, mental and psychological well-being of each resident.

35.

The Department of Human Resources' Rules and Regulation, Chapter 111-8, et seq., are designed in whole or in part to protect the health and welfare of residents at facilities such as Life Care Center of Lawrenceville.

36.

These Defendant Gwinnett Operations, LLC and Life Care Centers of America own and operate/manage a long-term care facility called Life Care Center of Lawrenceville at 210 Collins Industrial Way, Lawrenceville, Georgia, in Gwinnett County, Georgia.  Based on the foregoing, jurisdiction is proper in this Court; and, venue is proper under O.C.G.A. §§ 9-10-31 and 14-2-510.

37.

At all times material and relevant hereto, Defendant Gwinnett Operations, LLC had the right to control the time, manner, and method of duties performed by the nurses, nurses' aides, administrators, and other staff at Life Care Center of Lawrenceville, and had the right to discharge the nurses, nurses' aides, administrators and other staff at said facility.

38.

Furthermore, at all times material hereto, the nurses, nurses' aides, administrators, and other staff at Life Care Center of Lawrenceville were agents and/or employees of Defendant Gwinnett Operations, LLC and were acting within the course and scope of their agency.

39.

Accordingly, Defendant Gwinnett Operations, LLC is liable for the negligent acts and/or omissions of the nurses, nurses' aides, administrators, and other employees who are agents of Defendant Gwinnett Operations, LLC pursuant to the doctrine of *respondeat superior*.

40.

At all times material and relevant hereto, Defendant Life Care Centers of America had the right to control the time, manner, and method of duties performed by the nurses, nurses' aides, administrators, and other staff at Life Care Center of Lawrenceville, and had the right to discharge the nurses, nurses' aides, administrators and other staff at said facility.

41.

Furthermore, at all times material hereto, the nurses, nurses' aides, administrators, and other staff at Life Care Center of Lawrenceville were agents and/or employees of Defendant Life Care Centers of America and were acting within the course and scope of their agency.

42.

Accordingly, Defendant Life Care Centers of America is liable for the negligent acts and/or omissions of the nurses, nurses' aides, administrators, and other employees who are agents of Defendant Life Care Centers of America pursuant to the doctrine of *respondeat superior*.

## **FACTS**

43.

Plaintiffs incorporate herein paragraphs 1 through 42 above as though set forth fully verbatim.

44.

Ms. Dubose was initially admitted to Life Care Center of Lawrenceville on November 4, 2016, for rehabilitative services.

45.

Ms. Dubose was care planned on November 4, 2016, the day of her admission, as "at risk for break in skin integrity" and had a Braden Score of 14, indicating moderate risk. She was also care planned on November 4, 2016, as a short-term rehab patient. The "Initial Data Collection Tool/Nursing Service" also completed on November 4, 2016 notes her skin as clear and is a "1 person assist."

46.

The MDS dated November 11, 2016 indicates that Ms. Dubose does not have any skin breakdown but is at risk.

47.

On November 14, 2016, the box for "Open Area" is checked on the Weekly Skin Integrity Data Collection sheet and a circle is noted on the sacrum of the body chart. There are no measurements, description or documentation from nurse to physician regarding this "open area."

48.

The care plan is updated on November 17, 2016, but there is no supporting documentation evidencing any interventions were put in place to address her sacral wound.

49.

There are no further updates to the care plan after November 17, 2016.

50.

Beginning with the November 17, 2016 nursing note, it is noted that Ms. Dubose is needing increased assistance.  However, there is no supporting documentation that this was addressed or interventions put in place.

51.

The MDS dated November 18, 2016 indicates that Ms. Dubose did not have any skin breakdown even though there is documentation on November 17, 2016 indicating an "open area" on her sacrum.

52.

On November 18, 2016, physical therapy was discontinued.  There is no documentation in the physical therapy notes as to why this was discontinued even though it is documented that it is medically necessary for the patient to regain her strength.

53.

On November 18, 2016, occupational therapy was discontinued.  The discharge summary reads "D/c to hospital."  There is no documentation supporting that Ms. Dubose was sent to the hospital on this date.

54.

The MDS dated November 21, 2016 indicates that Ms. Dubose did not have any skin breakdown even though there is documentation on November 17, 2016 indicating an "open area" on her sacrum.

55.

On November 24, 2016, it is documented on the Pressure Ulcer Status Record that Ms. Dubose has a unstageable, 4.9x2.5x0 sacral wound and is 80% necrotic.

56.

There is a Wound Note on November 24, 2016 at 1:03 pm that documents Santyl was applied to the sacrum.  There are no previous nursing notes or IDT notes indicating that the wound was being treated prior to November 24, 2016.

57.

The first order for wound care was on November 24, 2016 and the physician ordered Santyl for the sacral wound.

58.

The MDS dated November 29, 2016, indicates that Ms. Dubose did not have any skin breakdown even though there is documentation on November 24, 2016 indicating that Ms. Dubose has an unstageable pressure wound measuring 4.9x2.5x0 on her sacrum.

59.

On November 29, 2016, Ms. Dubose was sent to Eastside Medical Center with altered mental status, hyperglycemia, fever, and acute renal failure secondary to dehydration, and sepsis.

60.

The source of the sepsis was an infected sacral pressure wound.

61.

On December 7, 2016, Ms. Dubose died.

## COUNT I

## PROFESSIONAL NEGLIGENCE

62.

Plaintiffs incorporate herein paragraphs 1 through 61 above as though set forth fully verbatim.

- 11 -

63.

By its acceptance of Lucille Dubose as a resident at its nursing home facility, Defendants owed her a duty to furnish her with that degree of care, skill and diligence required of the nursing home profession in general under similar conditions and like surrounding circumstances.

64.

The nurses, nurses' aides, administrators, and other employees at Life Care Center of Lawrenceville were subject to the various provisions of the Code of Federal Regulations as set forth below:

a)   42 CFR § 483.10 and 15(a) provide that the resident has a right to live a dignified existence;

b)   42 CFR § 483.13.(c) requires the facility to implement protocols to protect the resident from neglect;

c)   42 CFR § 483.13.(c)(2) requires that all instances of patient neglect be reported to the facility administrator and other officials in accordance with state law;

d)   42 CFR § 483.13.(c)(3) requires that the facility maintain evidence of its investigation into patient neglect and must prevent future neglect of patients;

e)   42 CFR § 483.13.(c)(4) requires that results of neglect investigation be reported to the administrator and appropriate state authorities;

f)   42 CFR § 483.15 requires the facility to care for its residents in a manner that maintains and enhances the resident's quality of life;

g)   42 CFR § 483.15.(e)(1) requires that each resident be provided services in the facility to accommodate their individual needs;

- 12 -

h)    42 CFR § 483.20.(b) and (g) require the facility to maintain a comprehensive and accurate assessment of the resident's medical needs, including the resident's general health and physical functioning;

i)    42 CFR § 483.20.(k)(1) requires that the facility prepare an accurate comprehensive care plan that addresses the patient's medical and nursing needs;

j)    42 CFR § 483.20.(k)(3) requires that services provided or arranged by the facility meet professional standards of quality and be provided by qualified persons;

k)    42 CFR § 483.25. requires the facility to provide services to attain and maintain the highest practicable physical, mental and psychosocial well-being in accordance with the resident's assessments and Care Plan;

l)    42 CFR § 483.25.(a)(3) requires the facility to provide a resident who is unable to carry out the activities of daily living necessary services to maintain good nutrition, hygiene, grooming and oral hygiene;

m)    42 CFR § 483.25(c)(2) requires the facility to provide necessary treatment and services to promote healing, prevent infection and prevent new sores from developing;

n)    42 CFR § 483.25(d)(2) requires that facility to provide appropriate care and treatment for incontinent patients to prevent urinary tract infections;

o)    42 CFR § 483.25(j) requires the facility to maintain acceptable parameters of hydration in the resident;

p)    42 CFR § 483.25(h)(1) requires the facility to ensure that the resident environment remains as free of accident hazards as is possible;

q)   42 CFR § 483.25(h)(2) requires the facility to ensure that each resident receives adequate supervision and assistance devices to prevent accidents;

r)   42 CFR § 483.25.(m) requires the facility to ensure that residents are free from any significant medication errors;

s)   42 CFR § 483.30. requires the facility to maintain an adequate nursing staff;

t)   42 CFR § 483.35. requires the facility to provide each resident a diet that meets daily nutritional needs;

u)   42 CFR § 483.75. requires that the facility be administered in such a way as to use its resources effectively and efficiently to maintain the highest practicable physical, mental and psychosocial well-being of each resident;

v)   42 CFR § 483.75. requires properly trained, qualified and competent staff;

w)   42 CFR § 483.75.(b) requires the facility to operate and provide services in compliance with law and acceptable professional standards and principles that apply to professionals providing said services; and

x)   42 CFR § 483.75.(k)(1) requires the facility to maintain clinical records in accordance with accepted professional standards and practices which are complete and accurate.

65.

Defendants were negligent and failed to exercise that degree of care required of the long-term care and skilled nursing home profession in general under similar conditions and like circumstances. To the extent that this Count may be considered a medical malpractice action as defined in O.C.G.A. § 9-11-8 or O.C.G.A. § 9-3-70, see the Affidavit of Charlotte Sheppard attached hereto as Exhibit "A" pursuant to O.C.G.A. § 9-11-9.1(a), to the extent that this statute

may apply, if at all, to this action, and which Affidavit is hereby incorporated herein by reference. The Affidavit specifies at least one negligent act or omission on the part of Defendants and/or its staff, and the factual basis for such negligent act or omission that caused injury to Lucille Dubose. The Affidavit is not inclusive of each act, error, or omission that has been committed by Defendants, and Plaintiffs reserve the right to contend and prove additional acts, errors, and omissions on the part of Defendants that reflects a departure from the requisite standard of care required by law.

66.

Notwithstanding the duty owed to Lucille Dubose by Defendants as described above, Defendants were negligent and failed to exercise that degree of care, skill and diligence required of the medical and nursing home profession in general under similar conditions and like circumstances.  The negligence of Defendants included, but was not limited to, the following:

a)   Failing to properly prepare and implement an appropriate care plan;

b)   Failing to provide appropriate incontinence care;

c)   Failing to prevent, discover and respond to urinary tract infections;

d)   Failing to provide wound care assessments and documented descriptions of the wound, and failing to provide treatment;

e)   Failing to provide appropriate hygiene;

f)   Failing to provide proper hydration;

g)   Failing to provide a clean and safe environment in the facility;

h)   Failing to properly assess Ms. Dubose' risk factors related to skin integrity;

i)   Failing to respond to obvious deterioration of Ms. Dubose's skin;

j)   Failing to adequately respond to Ms. Dubose's decreased mobility and altered mental status;

k)   Failing to keep Ms. Dubose dry and clean;

l)   Failing to adequately and consistently turn and reposition Ms. Dubose, and failing to document that it was consistently done as required by the standard of care;

m)  Failing to off load pressure from Ms. Dubose's bony prominences with pressure relieving devices;

n)   Failing to properly assess, document and treat Ms. Dubose's sacral pressure sore;

o)   Failing to recognize the presence of and appropriately address Ms. Dubose's pressure sores;

p)   Failing to properly document Ms. Dubose's clinical records;

q)   Failing to monitor and provide an assessment of urinary input and output; and

r)   Failing to implement measures to promote adequate nutrition and fluids.

67.

Defendants also have vicarious liability for the negligent acts and omissions of all persons or entities under Defendants' control either direct or indirect, including its respective employees, agents, and consultants.

68.

As a direct and proximate result of the negligence of Defendants as described herein, Lucille Dubose suffered injuries, physical and mental pain and suffering, disability, physical impairment and inconvenience, and ultimately death.  Further, she incurred medical expenses related to her injuries.

69.

Plaintiff Michelle McKinney is entitled to recover for the wrongful death of her mother as a result of said negligence.

70.

Moreover, Plaintiff Michelle McKinney, as Administrator of the Estate of Lucille Dubose, is entitled to recover damages for pain and suffering, as well as medical, funeral, and burial expenses.

## COUNT II

### NEGLIGENCE BASED UPON VIOLATION OF REQUIREMENTS OF THE GEORGIA BILL OF RIGHTS FOR RESIDENTS OF LONG-TERM CARE FACILITIES AT O.C.G.A. § 31-8-100 et seq.

71.

Plaintiffs incporate herein paragraphs 1 through 70 above as though set forth fully verbatim.

72.

The State of Georgia has promulgated the *Bill of Rights for Residents of Long-term Care Facilities* at O.C.G.A. § 31-8-100 et seq., which sets out requirements for those providing care, treatment and services to residents of long-term care facilities in this state.  In particular, O.C.G.A. § 31-8-108(a) requires that residents of long-term care facilities receive care, treatment and services that are adequate and appropriate and which must be provided with reasonable care and skill and in compliance with all applicable laws and regulations (including those listed in the preceding Count of this Complaint), and with respect for the resident's personal dignity, among other requirements.

73.

Pursuant to its authority granted by statute, the Georgia Department of Human Resources has promulgated a number of regulations for the provision of care, treatment and services to residents of long-term care facilities.  In particular, these regulations require that each resident be provided with care, treatment and services which are adequate and appropriate for the condition of the resident as determined by the resident's developing care plan.  The regulations also require that services be provided with reasonable care and skill and in compliance with all applicable laws and regulations (including the state laws and federal regulations identified above).

74.

Defendants, through their employees and agents, failed to comply with these requirements and provisions of O.C.G.A. § 31-8-108.  Said violations on the part of the Defendants proximately caused injuries to Lucille Dubose, including excruciating mental and physical pain and suffering, and medical expenses.

75.

Pursuant to O.C.G.A. § 31-8-136, Plaintiffs are entitled to bring an action as a result of the Defendants' violations of the "Bill of Rights for Residents of Long Term Care Facilities."

76.

As a proximate result of the violations of the "Bill of Rights of Residents of Long Term Care Facilities" on the part of the Defendants, Lucille Dubose suffered pain and suffering, incurred medical expenses, and ultimately death.

- 18 -

77.

The Defendants' violations of the *Georgia Bill of Rights for Residents of Long Term Care Facilities* and the regulations of the Georgia Department of Human Resources set out above constitute negligence.

78.

Defendants' failure to comply with the *Georgia Bill of Rights for Residents of Long Term Care Facilities* and the regulations of the Georgia Department of Human Resources set out above lead directly to the serious injury, illness, dehydration, pressure sores, terrible pain, suffering, anguish and grief, and subsequent death, of Lucille Dubose.

79.

As a result of the Defendants' acts and omissions constituting negligence, and the resultant damages and harm, the Plaintiffs are entitled to an award of damages in their individual and representative capacities as set out below.

80.

Accordingly, Plaintiff Michelle McKinney, as Administrator of the Estate of Lucille Dubose, is entitled to recover damages for the pain and suffering, medical expenses, and funeral and burial expenses incurred as a result of Defendants' violations, as set forth above.

81.

Moreover, Plaintiff Michelle McKinney, Individually, is entitled to recover for the wrongful death of her mother as a result of the Defendants' violations.

## COUNT III

## SIMPLE NEGLIGENCE

82.

Plaintiffs incorporate herein paragraphs 1 through 81 above as though set forth fully verbatim.

83.

Lucille Dubose entered into a contract for the provision of long-term residence, care, treatment and services with the Defendants in this action, and pursuant to their agreement, the Defendants had a duty to exercise ordinary care in the provision of that care, treatment and services to Mrs. Deems. The Defendants failed to exercise reasonable care in a number of instances with respect to the care, treatment and services provided to Lucille Dubose, and she sustained serious injury, illness, dehydration, pressure sores, infection, great pain and suffering, and ultimately death, as a result of the occurrences demonstrated below.

84.

Upon information and belief, Defendants failed to establish and implement policies and procedures designed to provide appropriate care, treatment and services to LCCL residents including Lucille Dubose.

85.

Upon information and belief, Defendants failed to properly prepare LCCL's budget so as to use its resources effectively and efficiently to maintain appropriate care treatment and services to its residents including Lucille Dubose.

86.

Upon information and belief, Defendants failed to implement policies, practices and protocols to protect residents, including Lucille Dubose, from neglect.

87.

Defendants failed to operate and provide services to Lucille Dubose in compliance with acceptable professional standards and principles that apply to professionals providing said services.

88.

Upon information and belief, Defendants failed to maintain an adequate nursing and non-professional staff to provide for Lucille Dubose's needs.

89.

Defendants failed to provide properly trained, qualified and competent staff to care for Lucille Dubose.

90.

Upon information and belief, Defendants failed to properly train and supervise the LCCL staff that was responsible for the provision of care, treatment and services to Lucille Dubose.

91.

Defendants failed to follow physician's orders with respect to the care and treatment that Lucille Dubose needed.

92.

Defendants failed to properly monitor and chart Lucille Dubose's condition and the course of care provided to address her medical conditions.

93.

The acts and omissions of Defendants which constitute simple negligence include, but are not necessarily limited to:

a)   Failing to provide appropriate incontinence care;

b)   Failing to provide appropriate hygiene;

c)   Failing to provide proper hydration;

d)   Failing to provide a clean and safe environment in the facility;

e)   Failing to keep Ms. Dubose dry and clean;

f)   Failing to adequately and consistently turn and reposition Ms. Dubose, and failing to document that it was consistently done as required by the standard of care; and

g)   Failing to off load pressure from Ms. Dubose's bony prominences with pressure relieving devices.

94.

As a direct and proximate result of each of the failures detailed above, Lucille Dubose incurred pain and suffering, medical expenses, funeral and burial expenses, and death.

95.

Many of the Defendants' acts and omissions described herein are ministerial in nature and constitute simple negligence for which the Defendants are liable to the Plaintiffs.

96.

As a result of the foregoing acts and omissions and the resultant injuries, illness, pain and suffering, and subsequent death, of Lucille Dubose, the Plaintiffs are entitled to recover from the Defendants for the wrongful death and for pain and suffering, medical, funeral, and burial expenses.

## COUNT IV

## **IMPUTED LIABILITY**

97.

Plaintiffs incorporate herein paragraphs 1 through 96 above as though set forth fully verbatim.

98.

All of Lucille Dubose's injuries and damages, and ultimately her death, were the direct result of the acts and omissions of the agents, servants and employees of the Defendant business entities conducted within the course and scope of each individual's employment with the Defendant business entity health care providers.

99.

The Defendant business entities are therefore vicariously liable for the individual employee and agent's acts and omissions, and for each individual officer, director, employee, agent and servant's negligent acts and omissions, and the resultant injuries, damages and subsequent death of Lucille Dubose by application of the doctrine of respondent superior.   The Plaintiffs are therefore entitled to recover damages from the Defendants as set out herein.

## **COUNT V**

## **FAILURE TO PROVIDE SUFFICIENT AND PROPER STAFFING AND NURSING**

100.

Plaintiffs incorporate herein paragraphs 1 through 99 above as though set forth fully verbatim.

101.

The Defendants had a duty to exercise ordinary and reasonable care in providing sufficient and competent staffing at Life Care Center of Lawrenceville.

102.

Life Care Center of Lawrenceville was chronically understaffed, which put patients at the facility at risk and in danger.

103.

The Defendants breached their duty to exercise ordinary and reasonable care in providing sufficient and competent staffing at Life Care Center of Lawrenceville.

104.

The Defendants failed to provide sufficient and competent staffing at Life Care Center of Lawrenceville and caused the facility to be chronically understaffed.

105.

The Defendants' acts and omissions caused permanent and debilitating injuries to Lucille Dubose, and ultimately her death.

106.

As a result of the Defendants' understaffing at Life Care Center of Lawrenceville, Defendants are liable to Plaintiff Michelle McKinney, as Administrator of the Estate of Lucille Dubose, for Lucille Dubose's excruciating physical and mental pain and suffering, medical and burial expenses, and wrongful death.

107.

The Defendants are liable to Plaintiff Michelle McKinney, individually, for the wrongful death of Lucille Dubose.

## COUNT VI

## PUNITIVE DAMAGES

108.

Plaintiffs incorporate herein paragraphs 1 through 107 as though set forth fully verbatim.

109.

As described and set forth herein, Defendants' actions, inactions, and omissions demonstrate willful misconduct, malice, wantonness, oppression, and an entire want of care giving rise to the presumption of Defendants' conscious indifference to the consequences of their actions.

110.

Plaintiffs sustained injuries, pain and suffering, financial loss and damages, as a result of Defendants' wrongful conduct.

111.

As a result of the foregoing, Plaintiffs are entitled to an award of punitive damages from the Defendants in an amount sufficient to punish Defendants and deter the Defendants from similar conduct in the future.

WHEREFORE the Plaintiffs pray for the following:

a)      That service of summons and process be had upon each Defendant,

b)      That this case be tried before fair and impartial jurors,

c)      That judgment be entered in favor of Plaintiff Michelle McKinney, Individually, against the Defendants in amounts in excess of $10,000.00 with all costs to be taxed against the Defendants for the wrongful death of Lucille Dubose,

d)   That judgment be entered in favor of Michelle McKinney, as Administrator of the Estate of Lucille Dubose, in excess of $10,000 for Lucille Dubose's pain and suffering, medical expenses, funeral and burial expenses;

e)   That judgment be entered in favor of Michelle McKinney, as Administrator of the Estate of Lucille Dubose, in an amount sufficient to punish Defendants and deter the Defendants from similar conduct in the future; and

f)   That the Court grant the Plaintiffs all other and further relief that it deems appropriate.

**JURY TRIAL DEMANDED**

Respectfully submitted this 26th day of January, 2018.

WATKINS, LOURIE, ROLL & CHANCE, PC

STEPHEN R. CHANCE
Georgia Bar No. 120395
LANCE D. LOURIE
Georgia Bar No. 458520
SUZANNE T. FINK
Georgia Bar No. 716244

5607 Glenridge Drive, Suite 500
Atlanta, Georgia  30342
T:   (404)760-7400
F:   (404)760-7409
E:   src@wlr.net
E:   ldl@wlr.net
E:   sf@wlr.net

*ATTORNEYS FOR PLAINTIFFS*

- 26 -